**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

```
UNITED STATES OF AMERICA       .   CRIMINAL NO. 04-10357-MEL
                               .
       V.                      .   BOSTON, MASSACHUSETTS
                               .   OCTOBER 25, 2006
RASHIEK T. CANNON              .
                               .
. . . . . . . . . . . . . . . . .
```

TRANSCRIPT OF INITIAL APPEARANCE
AND ARRAIGNMENT
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the government:   Paul R. Moore, Esquire
                      U.S. Attorney's Office
                      1 Courthouse Way, Suite 9200
                      Boston, MA  02210
                      617-748-3700
                      paul.moore@usdoj.gov

For the defendant:    Edward L. Hayden, Esquire
                      7 Franklin Street
                      Lynn, MA  01902
                      781-598-1190
                      Hayden.law@verizon.net

Court Reporter:

Proceedings recorded by digital sound recording,
transcript produced by transcription service.

*MARYANN V. YOUNG*
**Certified Court Transcriber**
**Wrentham, MA  02093**
**(508) 384-2003**

**I N D E X**

| WITNESSES | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Sheila O'Hara | 5 | 9 | -- | -- |

*MARYANN V. YOUNG*
Certified Court Transcriber

3

1 **P R O C E E D I N G S**

2  COURT CALLED INTO SESSION

3    THE CLERK: The Honorable Robert B. Collings
4 presiding.

5    THE COURT: Please be seated.

6    THE CLERK: The case of the United States v. Rashiek
7 Cannon, Criminal Action No. 04-10357 will now be heard before
8 this Court. Counsel please identifies themselves for the
9 record.

10    MR. MOORE: Good afternoon, Your Honor, Paul Moore
11 for the United States.

12    MR. HAYDEN: Good afternoon, Edward Hayden for
13 Mr. Cannon.

14    THE COURT: Okay. Good afternoon. Okay, we need to
15 do an arraignment and a detention hearing. So let's start off
16 with the arraignment. Mr. Cannon, if you'd stand. Have you
17 received a copy of the indictment, sir?

18    THE DEFENDANT: Yes.

19    THE COURT: Do you understand what you're charged
20 with?

21    THE DEFENDANT: Yes.

22    THE COURT: Have you had an opportunity at least
23 preliminarily to discuss the charge with your counsel so that
24 you're able to enter a plea of either guilty or not guilty when
25 I call upon you?

*MARYANN V. YOUNG*
**Certified Court Transcriber**

1    THE DEFENDANT: Yes. Yes.

2    THE COURT: And do you wish me to read the indictment
3 in its entirety?

4    THE DEFENDANT: Yes.

5    THE COURT: All right. To Count 1 which states the
6 Grand Jury charges that on or about October 5, 2004 in Brockton
7 in the District of Massachusetts Rashiek T. Cannon, the
8 defendant herein having previously been convicted in a court of
9 a crime punishable by imprisonment for a term exceeding one
10 year, did knowingly possess in and effecting commerce of
11 firearm and ammunition; to wit, one .38 caliber Charter Arms
12 revolver, bearing serial number 798511, and five rounds of
13 assorted .38 caliber ammunition, in violation of Title 18
14 United States Code Section 922(g)(1).

15    What say you, sir, to this indictment, are you guilty
16 or not guilty?

17    THE DEFENDANT: Not guilty.

18    THE COURT: All right. Thank you. You may be
19 seated. The case will proceed pursuant to the rules which
20 became effective on December 1, 1998 unless the defendant
21 within 14 days files a waiver. The 14-, 28- and 42-day period
22 specify the rules begin to run today. And I will set the case
23 for an initial status conference at three o'clock on Monday
24 December the 4th. Is that convenient, counsel?

25    MR. MOORE: Yes, Your Honor.

1       MR. HATDEN:  Yes, it is, Your Honor.

2       THE COURT:  Okay.  Okay, are we ready to go forward

3   with the detention hearing, Mr. Moore?

4       MR. MOORE:  Yes, Your Honor.

5       THE COURT:  And Mr. Hayden?

6       MR. HAYDEN:  Yes, Your Honor.

7       THE COURT:  All right.  Proceed, Mr. Moore.

8       MR. MOORE:  All right.  The government calls its

9   witness, ATF Special Agent Sheila O'Hara.

10      THE COURT:  Come forward, ma'am, stand in the witness

11  box and raise your right hand.

12      GOVERNMENT WITNESS, SHEILA O'HARA, SWORN

13                      DIRECT EXAMINATION

14  BY MR. MOORE:

15  Q.  Please state your name and spell it for the record.

16  A.  Sheila O'Hara, O-H-A-R-A.

17  Q.  What do you do for a living?

18  A.  I'm a special agent with the Bureau of Alcohol, Tobacco,

19  Firearms and Explosives.

20  Q.  How long have you been doing that?

21  A.  Nineteen years.

22  Q.  And please describe your training?

23  A.  Attending the ATF Academy, basic criminal investigator

24  school, attended numerous courses over my 19 years, refresher

25  courses regarding firearms investigations, narcotics

*MARYANN V. YOUNG*
**Certified Court Transcriber**

6

1  investigations, interviewing techniques and such.
2  Q.   What type of cases are you currently assigned to
3  investigate?
4  A.   I predominantly investigate the adoption cases which are
5  cases that are referred from the state and local level up to
6  the federal level for prosecution.  It's called the violent
7  crime coordinator and that's my title.
8  Q.   All right.  We're you assigned to investigate the matter
9  before the Court today?
10 A.   Recently, yes.
11 Q.   All right.  And are you relying, for purposes of your
12 testimony here today, are you relying on the reports of any
13 other law enforcement?
14 A.   Yes, I am.
15 Q.   What reports?
16 A.   It would be the Mass. state police.
17 Q.   All right.  And if you would describe the events that gave
18 rise to the matter that you've been investigating here today?
19 A.   On October 5, 2004 at approximately six o'clock in the
20 evening, Mass. State police Troopers McCarthy, Lopes and
21 Telford were in an unmarked motor vehicle patrolling Brockton,
22 the city of Brockton, and they observed a vehicle drive by
23 their location.  It was a 30 mile an hour zone and they clocked
24 the car in excess of 40 mph.  They followed the motor vehicle,
25 activated their lights and sirens, attempted to pull it over.

1  The vehicle sped away a little bit quicker.  The troopers
2  noticed the three individuals inside the motor vehicle making
3  furtive movements within the car and the car eventually pulled
4  over I believe on Walnut Street.
5  Q.   All right.  And did officers approach the vehicle?
6  A.   Yes, the three troopers exited their car and approached
7  the vehicle that just pulled over.
8  Q.   And did one of the officer's approach the right hand
9  passenger's side?
10 A.   I believe two of them did.  I believe it was Trooper Lopes
11 and Telford approached the passenger's side and another,
12 Trooper McCarthy approached the driver's side.
13 Q.   All right.  And according to the reports did one of the
14 officers, did one of the troopers encounter Mr. Cannon?
15 A.   Yes, Mr. Cannon was seated in the front seat passenger and
16 Trooper Lopes observed a firearm almost immediately approaching
17 the motor vehicle and he yelled out gun to his partners.
18 Q.   And where was that firearm?
19 A.   It was recovered from the pocket of Rashiek Cannon.
20 Q.   All right.  And this was something that the trooper was
21 able to see as he approached?
22 A.   Yes.
23 Q.   All right.  And after that sign was Mr. Cannon, was he
24 taken into custody?
25 A.   Yes, he was.

1  Q.   All right.  And fast forwarding to last Friday October
2  20th, did you have occasion to help in the retrieval of
3  Mr. Cannon from Bristol County House of Corrections?
4  A.   Yes.  We received a phone call I think it was Wednesday
5  from Bristol County House of Correction down in Dartmouth
6  advising us that Mr. Cannon was scheduled to be released on
7  Friday and they had our federal detainer lodged on him and they
8  were notifying us of this, and myself and another agent went
9  down to Dartmouth facility to pick up Mr. Cannon.
10 Q.   All right.  Was he advised of his Miranda Rights?
11 A.   Yes, I advised him of his Miranda Rights.
12 Q.   All right.  Did he appear to understand that?
13 A.   Yes, he did.
14 Q.   And subsequent to that, did he make any statements to you
15 concerning the events of October 5, 2004?
16 A.   Yes.  I asked him about the firearm recovered from his
17 pocket and he admitted that he did have the firearm.  And he
18 advised me, I asked him why, why he had the gun and he said for
19 protection against some guys that were jealous of him.  And I
20 asked him what they were jealous about and he implied that it
21 had to do with females.
22 Q.   Yes.  And let me ask, was the firearm, what firearm was
23 recovered?
24 A.   A .38 caliber five shot revolver charter arms model
25 undercover.

1  Q.   All right.  Was it loaded?
2  A.   Loaded with five rounds, yes, sir.
3  Q.   All right.  Was the firearm later inspected?
4  A.   Yes.
5  Q.   And was it manufactured outside of the District of
6  Massachusetts?
7  A.   Yes, it was.
8  Q.   All right.  And what about the ammunition?
9  A.   That also was manufactured outside of Massachusetts.
10          MR. MOORE:  Okay, thank you.  Nothing further, Your
11 Honor.
12          THE COURT:  Okay.
13                     CROSS EXAMINATION
14 BY MR. HAYDEN:
15 Q.   You mentioned there were three state troopers that made
16 the arrest?
17 A.   Correct.
18 Q.   You'd agree with me there's only as far as you know one
19 report that was prepared?
20 A.   As far as I'm aware there's only one report?
21 Q.   And that report is on Brockton police letterhead for lack
22 of a better term for it?
23 A.   Yes, sir.
24 Q.   Not the state police letterhead?
25 A.   Correct.

*MARYANN V. YOUNG*
Certified Court Transcriber

10

1  Q.  And now the - you told us about the statement he made last
2  Friday.  Did you write a report summarizing that?
3  A.  It's in the process of being written, yes, sir.
4  Q.  Now have you spoken to any of the three troopers involved
5  in the arrest?
6  A.  I have not.
7  Q.  You've just relied on the report that they submitted?
8  A.  Yes, sir.
9  Q.  You'd agree with me in that report that this cruiser
10 initially was traveling north?
11 A.  I'd have to look.  I don't know the directions; I'd have
12 to look at the report.
13        MR. HAYDEN:  May I approach, Judge?
14        THE COURT:  Sure.
15 A.  I believe, it says that the car that Mr. Cannon was riding
16 in was traveling north on Walnut Street.
17 BY MR. HAYDEN:
18 Q.  And the cruiser was behind it?
19 A.  It doesn't say the cruiser's location.  It just, it just
20 says that Trooper McCarthy clocked the GMC with his cruisers
21 odometer at a speed in excess of 40 mph in a 30 mph zone.
22 Q.  Okay.  Fair enough.  But they clocked it for doing 40 in a
23 30 zone or in excess of 40 in a 30 zone for a quarter of a
24 mile?
25 A.  That's what it says, yes.

*MARYANN V. YOUNG*
**Certified Court Transcriber**

11

1  Q.   Any idea how long this Envoy was being observed by these
2  troopers before they started clocking it?
3  A.   I do not think there's – there's no indication in the
4  report about that.
5  Q.   But in any event once they saw it going in excess of 40
6  the blue lights went on?
7  A.   Activated lights and siren on the cruiser.
8  Q.   And that's when the Envoy increased its speed?
9  A.   Correct.
10 Q.   You'd agree with me it doesn't say how fast that Envoy
11 speeded up to?
12 A.   Correct.
13 Q.   And it doesn't say how long they followed it while it was
14 going at this speed in excess of 40?
15 A.   Correct.
16 Q.   But you'd agree with me that they wrote a citation that
17 said it charged the driver of that Envoy with speeding and the
18 speed they put on that citation was 40?
19 A.   I don't have a copy of the citation but that's what it
20 says in the report, yes.
21 Q.   And you'd agree with me an Envoy is an SUV?
22 A.   Yes.
23 Q.   And it appears at least when they say they, the police
24 were in a cruiser that they were in a car?
25 A.   Yes.

*MARYANN V. YOUNG*
**Certified Court Transcriber**

1  Q.  And they say in the report that the front seat passenger
2  ducked?
3  A.  I believe they said everybody was moving around.  And I
4  do—
5  Q.  Well, okay.  But, okay.  Yeah, but I'm focusing on the
6  front seat.  And they said the front seat passenger was
7  Mr. Cannon?
8  A.  Yes.
9  Q.  And he ducked?
10 A.  Yes.
11 Q.  They don't explain how they saw him move once he ducked
12 while they were behind him?
13 A.  It says front seat passenger ducked and moved to the
14 center of the vehicle.  That's all it says.
15 Q.  Fair enough.  And it doesn't – no other description of
16 what he moved towards the center?
17 A.  Correct.
18 Q.  He didn't throw the gun out of that Envoy?
19 A.  No.
20 Q.  Obviously, he didn't put it under the seat?
21 A.  Correct.
22 Q.  And this trooper Lopes or Lopez immediately yelled gun
23 when he got to the side of the Envoy?
24 A.  Yes.
25 Q.  That gun was in the right front, in Cannon's right front

1  jacket pocket?
2  A.   Right front jacket pocket, yes.
3  Q.   Basically between him and the door of the Envoy?
4  A.   Yes.
5  Q.   They don't say anything about whether the light, the
6  interior light on that Envoy was on?
7        MR. MOORE:  Objection, Your Honor, this relevance at
8  the current proceeding.  These really are more suppression
9  matters.
10       THE COURT:  No, I will allow it based on the, it's
11 proper cross given the scope of the direct.  So continue,
12 Mr. Hayden.
13 BY MR. HAYDEN:
14 Q.   I think I – I'm not sure that he answered though.  They
15 don't say anything in the report about whether the light was on
16 inside that Envoy?
17 A.   Correct.
18 Q.   And they say that Mr. Cannon was moving towards the center
19 of the Envoy when they saw him moving?
20 A.   Yes.
21 Q.   They don't put anything in the report what they eventually
22 found in the center of the Envoy?
23       PAUSE
24 A.   It does not appear so, no.
25       MR. HAYDEN:  I have no other questions.

*MARYANN V. YOUNG*
**Certified Court Transcriber**

14

1        THE COURT:  Any further questions, Mr. Moore?
2        MR. MOORE:  Nothing, Your Honor.
3        THE COURT:  All right.  Thank you.  You may step
4 down.
5    WITNESS EXCUSED
6        THE COURT:  Do you have any further evidence?
7        MR. MOORE:  No, Your Honor.
8        THE COURT:  Mr. Hayden, was the defendant interviewed
9 by pretrial?
10       MR. HAYDEN:  He wasn't.  He would like to be.  It was
11 just--
12       THE COURT:  Okay.
13       MR. HAYDEN:  --we couldn't get it done today.
14       THE COURT:  Okay.  Well, what would you like to do?
15 Would you like me to have him back tomorrow and have him
16 interviewed and then continue this or?
17       MR. HAYDEN:  Well, I would like to have him, I can't
18 be here tomorrow--
19       THE COURT:  Okay.
20       MR. HAYDEN:  --or Friday.  If we--
21       THE COURT:  How about Monday?
22       MR. HAYDEN:  I'm in the Quincy court in the morning.
23 If Your Honor could make it in the afternoon--
24       THE COURT:  Sure.
25       MR. HAYDEN:  --I could be here.  As late as possible.

*MARYANN V. YOUNG*
**Certified Court Transcriber**

1     THE COURT: Okay. Well you're, see the problem is
2  you're entitled to be present if you wish with me when he's
3  interviewed. Do you wish not to be present because if you
4  don't get here until late in the day and the interview hasn't
5  taken place we, you know, we're not going to, I'm not going to
6  have any report.
7     MR. HAYDEN: Is there any chance can we do it next
8  Thursday, Thursday November 2nd. I can be here all day.
9     THE COURT: Yeah, that shouldn't be a problem.
10    PAUSE
11    THE COURT: Let's do it at two o'clock. No, I'm
12 sorry, let's do it at 1:30. I've got a jury trial going so
13 we'll have to fit it in during the lunch hour. We'll do it at
14 1:30 on Thursday November 2nd, and if you'd be here first thing
15 in the morning with me and I'd ask pretrial to do an interview.
16 Sound good?
17    MR. HAYDEN: Thank you, Judge.
18    THE COURT: Okay. Thank you. That concludes the
19 proceeding. The defendant's remanded.
20    THE CLERK: All rise.
21 //
22 //
23 //
24 //
25 //

*MARYANN V. YOUNG*
**Certified Court Transcriber**

16

1                           CERTIFICATION

2     I, Maryann V. Young, court approved transcriber, certify

3  that the foregoing is a correct transcript from the official

4  digital sound recording of the proceedings in the

5  above-entitled matter.

6

7  /s/ Maryann V. Young                    May 27, 2008

*MARYANN V. YOUNG*
**Certified Court Transcriber**